Michael R. Wirschem, Ak Bar #95-11049
LAW OFFICE OF CRIS W. ROGERS
2600 Denali Street, Suite 711-B
Anchorage, Alaska 99503
Phone:    907.565.5663
Fax:      907.565.5684
E-mail: mikewirschem@gmail.com

Attorneys For The Defendants

RECEIVED

JUN 0 1 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA,<br><br>              Plaintiff,<br><br>vs.<br><br>LOREN MORGAN and MELODY MORGAN, individually and as parents of EVAN MORGAN, a minor,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:06-cv-15-RRB<br>)<br>)<br>)<br>)<br>) |

### OPPOSITION TO SAFECO'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

The Defendants hereby oppose Safeco's motion for summary judgment, hereinafter "MSJ", and by cross motion request summary judgment and an order for coverage.

### STATEMENT OF FACTS

On April 10, 2000, Defendant Loren Morgan, D.C., purchased an auto policy and an umbrella policy from Safeco. The umbrella policy was sold to Dr. Morgan through local insurance brokerage

**LAW OFFICE OF
CRIS W. ROGERS**
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

and agency Ribelin Lowell.    The initial Umbrella policy period was April 10, 2000, through April 10, 2001, and Dr. Morgan has renewed the policy each year through the present.

In purchasing the policies Dr. Morgan made it very clear to Ribelin Lowell that he wanted a lot of coverage.    Ribelin advised Dr. Morgan that his best coverage option would be to purchase Safeco auto and umbrella policies.    Before he could obtain the $1,000,000 Safeco umbrella policy, Dr. Morgan was required to purchase and maintain at least $500,000 in auto liability coverage and at least $300,000 in personal liability coverage and $300,000 in premises liability coverage.

The umbrella declarations list how many automobiles and drivers under 25 years old are in the household. Exhibit 1, p.3. Higher umbrella premiums were charged for an additional automobile and driver. Exhibit 1, p.2.    The first three exposures on the SAFECO PERSONAL UMBRELLA RENEWAL QUESTIONAIRE are automobiles, company cars and antique cars. Exhibit 2, p.1. Safeco's umbrella coverage premium was almost exclusively based on the number of vehicles and drivers in Dr. Morgan's household.

Despite the fact that Dr. Morgan purchased $1,000,000 in auto liability umbrella coverage, Ribelin and Safeco failed to make any offer of UM/UIM umbrella coverage either when it sold Dr. Morgan his original umbrella policy, or when the policy was renewed on April 10th of each year.

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

The failure to offer UM/UIM coverage equal to the $1,000,000 umbrella auto liability limits was a violation of AS 21.89.020(c) which provides:

> (c) An insurance company offering automobile liability insurance in this state for bodily injury or death shall, initially and at each renewal, offer coverage prescribed in AS 28.20.440 and 28.20.445 or AS 28.22 for the protection of the persons insured under the policy who are legally entitled to recover damages for bodily injury or death from owners or operators of uninsured or underinsured motor vehicles. The limit written may not be less than the limit in AS 28.20.440 or AS 28.22.101. Coverage required to be offered under this section must include the following options:
> (1) policy limits equal to the limits voluntarily purchased to cover the liability of the person insured for bodily injury or death;

The umbrella policy provided Dr. Morgan with $1,000,000 of coverage for personal injury which occurred during the policy period:

> **9.** **"Occurrence"** means:
> **(a)** an accident including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the coverage period, in:
> **(1)** **personal injury**

> **10.** **Policy Period and Territory**
> This policy applies to **occurrences** happening anywhere during the policy period which is stated in the declarations.

Exhibit 1, pp.13, 17.

Despite the failure by Safeco or Ribelin to offer equal UM/UIM limits with the umbrella, the policy provided equal

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

UM/UIM coverage by operation of law per AS 21.89.020(a), and by the following express policy term:

> **15.  Conflicting Statutes**
> If any of the terms of this policy should conflict with state or local law, the **insured** can enforce them as if the terms had been changed to conform.

Exhibit 1, p.18.

On June 22, 2001, the Alaska Supreme Court issued its decision in Holderness v. State Farm Fire And Casualty Company, 24 P.3d 1235 (Alaska 2001), holding that a personal umbrella policy qualifies as automobile liability insurance under Alaska's insurance code and without either an equal limits UM/UIM offer under AS 21.89.020(c), or waiver per section .020(e), the policy was reformed to provide the UM/UIM coverage mandated by AS 21.89.020(a).

On January 3, 2002, Dr. Morgan's vehicle was rear-ended by Allison Weeks.  The double impact collision caused debilitating injuries to his cervical spine.

On March 29, 2004, Dr. Morgan's attorneys contacted Safeco, notified the carrier of his legal representation, and advised Safeco that a surgery related to the January 3, 2002 motor vehicle collision had been scheduled.  The double disc fusion surgery was performed by Dr. Kralick on April 7, 2004.  Safeco's Terry Diane Betcher responded by sending Dr. Morgan's attorneys a Claims Application and an Authorization To Disclose Health

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

Information And Other Records.  The Safeco Claims Application

provided in part: "TO ENABLE US TO PROCESS YOUR CLAIM(S), PLEASE

COMPLETE THIS FORM AND RETURN IT PROMPTLY."  Exhibit 3, p.1.  On

April 20, 2004, Dr. Morgan completed the Claims Application,

medical Authorization, and an addendum where he stated:

> Listed under wage or salary is the gross
> business loss.  I am currently working on
> the total business loss.  It will be over
> $100,000.

Exhibit 3, p.2.

Dr. Morgan's attorneys returned the completed Claims

Application, Authorization and business loss addendum to Safeco

on April 28, 2004.  Safeco correspondence from Sharon Brink to

Dr. Morgan's counsel dated July 19, 2004, stated in part:

> This is to advise you that as of July 19, 2004,
> claim # 192652532007 has been reassigned to me
> for handling of UIM claim.  Please be advised
> that Terry Betcher will still be handling the
> PIP portion of the claim.

Exhibit 4.

An email from Safeco's Sharon Brink to Dr. Morgan's

attorneys dated August 18, 2004, states in part:

> Hi Cris & Jennifer, Jennifer, you and I spoke
> before and I requested additional information
> regarding Loren Morgan's UIM claim.

Exhibit 5.

The email further inquired about Dr. Morgan's UIM demand and

settlement of his UIM claim.  Exhibit 5.

Meanwhile, on December 26, 2003, Dr. Morgan's attorneys

filed suit against Ms. Weeks in superior court.

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

On October 24, 2004, AS 21.89.020 was amended to add
subsection (i) which provides:

> (i)  In this section, "automobile liability
>      insurance" does not include coverage
>      provided only on an excess or umbrella
>      basis.

On November 7, 2004, Dr. Morgan's attorneys provided
Safeco's UM/UIM adjuster Sharon Brink with copies of the medical
records, total medical costs in excess of $69,786, wage loss,
notice that the diminution of Dr. Morgan's earning capacity was
being calculated, and notice that Dr. Morgan had received a
whole body disability from the collision in excess of 30%.
Exhibit 6.

On November 14, 2004, Dr. Morgan's attorneys wrote to
notify Safeco of a potential claim on Dr. Morgan's Umbrella
policy #UH1417077 for injuries suffered January 3, 2002:

> The claim arises under an automobile collision
> where significant injuries were suffered.  Dr. Morgan
> has suffered personal injury in excess
> of the third-party's liability coverage and
> his UM/UIM coverage.  Additional information
> will be provided in the near future.  If you
> have any questions in the interim, please do
> not hesitate to contact me.

Exhibit 7.

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

Safeco did not respond to the November 14, 2004, letter
from Dr. Morgan's attorneys asserting that there was indeed UIM
coverage under his umbrella policy.

On January 10, 2005, Safeco UIM adjuster Sharon Brink wrote to Dr. Morgan's attorneys and asked for "information and documentation so that we may better understand your client's UIM claim[.]"  Exhibit 8.

On January 24, 2005, tortfeasor Allison Weeks filed her Answer to Dr. Morgan's superior court lawsuit.  On May 23, 2005, the Honorable Craig F. Stowers issued the pretrial order stating that the case was calendared for trial commencing May 15, 2006.

On August 23, 2005, Safeco distributed an independent peer records review that determined Dr. Morgan's cervical fusion was related to the 01-03-2002, motor vehicle accident.  Exhibit 9. Safeco adjuster Betcher states: "I am now closing the medical payments portion of Dr. Morgan's claim."  Id. (Emphasis Added).

On November 9, 2005, USAA Insurance Co. paid Ms. Weeks' liability policy limits to Dr Morgan.  On November 15, 2005, Dr. Morgan's attorneys demanded payment of his UIM auto policy limits from Safeco.  On December 15, 2005, Safeco tendered Dr. Morgan's auto UIM policy limits.  Dr. Morgan's attorneys sent Safeco a written demand for payment of his umbrella UIM policy limits the next day, December 16, 2005.  Safeco's response was to deny coverage and file this lawsuit against its insured.

**LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax**

## **RELIEF REQUESTED**

The Defendants request that this Court deny Safeco's motion for summary judgment, grant the Defendants' motion for summary

judgment, and order Safeco to provide Dr. Morgan with UIM umbrella coverage with a face limit of $1,000,000.

## STANDARD GOVERNING SUMMARY JUDGMENT

A party is entitled to summary judgment when its motion demonstrates no material issues of fact exist and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

## OPPOSITION TO SAFECO'S MOTION FOR SUMMARY JUDGMENT

Safeco's MSJ attempts to direct the Court's attention away from the consequences of Safeco's violation of AS 21.89.020(c)(1) when it sold the umbrella policy. Per the express terms of the umbrella policy, Exhibit 1, p.18, Dr. Morgan can enforce policy terms that conform to UIM coverage limits equal to liability limits. Per AS 21.89.020(a) his umbrella policy "must contain" equal UIM and liability limits. Dr. Morgan's rights to UIM coverage under the express policy terms and under AS 21.89.020 are enforceable irrespective of the date his right to demand payment of UIM benefits accrued.

The date Dr. Morgan's UIM claim "accrued" is irrelevant to the availability of UIM coverage for his personal injuries that occurred during the 04-10-01 TO 04-10-02 umbrella policy period. Nevertheless at page 6 of Safeco's MSJ the carrier argues about the date of accrual of a UIM claim.

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

UIM coverage available to Dr. Morgan for personal injuries which occurred during the policy period is not dependent upon when the claim "accrued". In fact, neither AS 28.20.445(e)(1) or the Alaska Supreme Court mentions when a UIM claim "accrues". Subsection 445(e)(1) states that UM/UIM coverage "may not apply . . until the limits of liability. . . have been used up." Thus, subsection 445(e)(1) conditions a claimant's right to payment of UIM benefits, but it does not address whether or not an insured's policy includes UIM coverage to draw on.

In Curran v. Progressive Northwestern Insurance Company, 29 P.3d 829, 833 (Alaska 2001) the court states that a UIM claimant must exhaust or use up "all underlying coverage before recovering under a UIM policy." (Emphasis added). The Court also states that UIM claimants must exhaust available liability coverage before "pursuing" or "proceeding" with UIM claims." The court never mentions when a UIM claim "accrues".

In Coughlin v. Government Employees Insurance Company, 69 P.3d 986, 988-989 (Alaska 2003), the court states:

> AS 28.20.445(e)(1) requires a claimant to exhaust the underlying liability policy limits before pursuing underinsured motorist benefits."

The court also says "exhausted for the purposes of drawing upon underinsured motorist coverage." Coughlin, 69 P.3d, 986, 989. The court in Coughlin repeatedly refers to exhaustion as required "before underinsured motorist coverage can be drawn

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

Page 9 of 26

upon" and to exhaustion "for the purposes of invoking under-insured motorist coverage". Id. at 989-992.

In Progressive Insurance Company v. Simmons, 953 P.2d 510, 513 (Alaska 1998) the supreme court rejected Progressive's proposed definition of an underinsured motor vehicle in favor of its insured because "her right to UIM benefits would never have been triggered."

Safeco suggests that a policyholder doesn't have UIM coverage to draw on unless a loss occurs and liability limits are exhausted, but occurrence policies such as Dr. Morgan's umbrella don't work that way. By operation of law, his umbrella provides UIM coverage for injury occurrences during the 04-10-01 TO 04-10-02 policy period. Safeco cannot treat the umbrella policy's coverage as if it were a "claims made" policy in effect in November 2005.

Curran requires exhaustion before recovering under a UIM policy or before proceeding with a claim. Coughlin requires a claimant to exhaust liability limits before drawing upon UIM coverage, before pursuing UIM benefits, or before invoking UIM coverage. Simmons talks about triggering an insured's right to UIM benefits. These cases address when a claimant can demand payment of UIM benefits. The court has never suggested that the question of whether a policy provides any UIM coverage is determined after the underlying liability limits are exhausted.

**LAW OFFICE OF CRIS W. ROGERS**
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

Although the date Dr. Morgan's UIM claim accrued is immaterial to the case before this Court, it is interesting to note Safeco adjuster Sharon Brink's comments.  In Ms. Brink's letter of July 19, 2004, she discusses her handling of Dr. Morgan's UIM claim. Exhibit 4.  Ms. Brink's August 18, 2004, email requests "additional information regarding Loren Morgan's UIM claim." Exhibit 5.  Her letter of January 10, 2005, asks for "information and documentation so that we may better understand your client's UIM claim[.]" Exhibit 8.  Safeco's position on summary judgment concerning when a UIM claim accrues is contradicted by the statements of its UIM adjuster.  Ms. Brink's comments are, however, consistent with Alaska case law.

The scant legal authority presented by Safeco in its MSJ does not come close to demonstrating that it is entitled to judgment as a matter of law on the UIM offer violation, policy reformation and subsequent legislative enactment issues presented in this case.

Curran addresses exhaustion as a condition that must be satisfied before an insurer's obligation to pay UIM benefits arises.  Danbeck v. American Family Mutual Insurance Company, 245 Wis.2d 186, 629 N.W.2d 150, 154 (Wisconsin 2001) dealt with the same narrow issue:

> [W]hether a UIM insurer's obligation to pay
> UIM benefits to its insured is triggered when the
> insured settles with the tortfeasor's liability

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

insurer for less than full liability limits and
then credits the UIM carrier for the difference.

The court in Danbeck concludes that the insurer's duty to

pay UIM benefits does not arise until exhaustion of underlying

liability limits, but the issues resolved in Danbeck and Curran

do not provide guidance on the offer violation, operation of law

and amended statute issues presented in the instant case.

Coelho v. ITT Hartford, 251 Conn. 106, 752 A.2d 1063, 1069

(Connecticut 1999) is a statute of limitations case which

concludes the statute does not begin to run on a claim for UIM

benefits until the tortfeasor's liability limits have been

exhausted.  Honbo v. Hawaiian Insurance & Guarantee Company, 86

Haw. 373, 949 P.2d 213, 215-216 (Hawaiian App. 1997) is a

statute of limitations case which holds that Hawaii's two year

statute of limitations governing suits brought on contracts

providing no-fault benefits or optional additional coverage

expired two years after the plaintiff exhausted his underlying

no-fault insurance.

Safeco's citations to Coelho and Honbo are not accompanied

by analysis demonstrating how cases dealing with statutes of

limitations or the time a cause of action accrues to sue the UIM

insurer supports judgment as a matter of law in Safeco's favor

on the UIM offer violation, imputation of coverage and

**LAW OFFICE OF**
**CRIS W. ROGERS**
**2600 Denali St.**
**Suite 711-B**
**Anchorage, AK 99503**
**(907) 565-5663 ph**
**(907) 565-5684 fax**

Page 12 of 26

subsequent legislative enactment issues before this Court on summary judgment.

Hamm v. Allied Mutual Insurance Company, 612 N.W.2d 775, 776 (Iowa 2000) addressed the issue of when a policy limitation period begins to run on an insured's claim for UIM benefits. Safeco cites to Hamm "and cases cited therein" which discuss the three possible events that courts consider as the date when a policy's time limitation period begins to run for bringing a UIM claim.

Dr. Morgan's umbrella policy does not contain a time limitation within which to submit a demand for payment of benefits. Moreover, policy time limitations have nothing to do with whether Dr. Morgan's umbrella policy provides UIM coverage as a matter of law. What his umbrella policy does state is that if any of the terms of the policy should conflict with state law, the insured can enforce them as if the terms had been changed to conform with state law. Exhibit 1, p.18. Safeco's MSJ completely ignores the fact that when Dr. Morgan purchased his umbrella the policy granted him an unconditional right to enforce its terms in conformance with AS 21.89.020(a)&(c).

Safeco fails to present this Court with a single case that deals with any effects statutory changes have on insurance policies after they are sold. If there were no cases that addressed this critical issue then Safeco's failure to support

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

its MSJ would be different; however, as set out herein, there are <u>many</u> cases on this issue.  Safeco's motion further fails to provide any legal support for its position on legislative clarification versus statutory change.  Nor does Safeco present any legislative history related to the enactment of AS 21.89.020(i).  Safeco's MSJ should be denied.

## DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

The material facts presented herein are not in dispute.  As discussed below, the Defendants are entitled to judgment as a matter of law based on all of the following points: 1. The express terms of the umbrella policy; 2.  UIM umbrella coverage was mandated upon formation of the umbrella policy contract by AS 21.89.020(a) and (c); 3. Case law from Alaska and other states; 4. The language of AS 21.89.020(i) and legislative intent; 5.  Additional provisions of the Alaska Statutes governing retrospective application of statues.  Each basis is discussed in turn below.

## 1.    The express terms of the umbrella policy

**LAW OFFICE OF
CRIS W. ROGERS**
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

Safeco's refusal to provide UIM coverage is first and foremost contrary to the express terms of Dr. Morgan's umbrella policy. Paragraph 15 concerning conflicting statues provides as follows:

> **15.  Conflicting Statutes**
> If any of the terms of this policy should conflict with state or local law, the **insured** can enforce them as if the terms had been changed to conform.

Exhibit 1, p.18.

Per this paragraph, Dr. Morgan had the right to enforce the terms of his umbrella policy as if its terms had been changed to conform to AS 21.89.020(a) and (c). The conformed policy terms provide $1,000,000 UIM coverage.

## 2.    UIM Umbrella coverage mandated at formation by AS 21.89.020

AS 21.89.020(c)(1) required Safeco to offer UIM limits equal to liability limits when it sold the umbrella policy, and upon formation of the policy contract AS 21.89.020(a) required that the umbrella provide equal limits of UIM coverage by operation of law, regardless of the terms in the policy.

## 3.    Case law from Alaska and other states

Numerous case law decisions support an order for coverage in this case. Although the Alaska Supreme Court has not decided a case addressing the precise issue of the effect a statutory change has on existing UIM coverage years after the policy was sold in violation of AS 21.89.020, appellate courts in several states have rejected Safeco's position that the UIM umbrella coverage available to its insured by operation of law is supplanted by a subsequent statutory change to the UIM offer requirements.

Alaska Supreme Court cases clearly establish that an insured's policy is reformed by operation of law to conform to statutory requirements when an insurer sells the policy without

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

offering coverage mandated by statute.  Holderness v. State Farm
Fire & Casualty Company, 24 P.3d 1235, 1241 (Alaska 2001)
(Umbrella policy treated as an automobile liability policy under
AS 21.89.020 and is reformed to provide equal UIM coverage);
State Farm Mutual Automobile Insurance Company v. Harrington,
918 P.2d 1022, 1025 (Alaska 1996)("Where required coverage is
not waived it must be provided.");  Hughes v. Harrelson, 844
P.2d 1106, 1107 (Alaska 1993)(Statutory mandate for coverage
provides compelling reason to restructure the insurance
contract); Burton v. State Farm Fire & Casualty Company, 796
P.2d 1361, 1363 (Alaska 1990) (Insurers are not permitted to
issue policies containing provisions that reduce the scope of
coverage below the legal minimum.");  Hillman v. Nationwide
Mutual Fire Insurance Company, 758 P.2d 1248, 1251 (Alaska 1988)
("Our statute prohibited coverage narrower than that which was
statutorily prescribed.").

    In addition, Judge Sedwick recently decided a case where
UIM umbrella coverage not expressly provided in the policy was
available by operation of Alaska law in Allstate Insurance
Company v. Prosser, 3:05-cv-60-JWS, filed February 24, 2006.
Exhibit 10, pp.4-5.

    These cases make it very clear that an insurer simply
cannot sell or issue a policy in Alaska with statutory UIM
coverage deficiencies because the deficiencies are corrected by

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

operation of law.  The only way Safeco could legally sell Dr. Morgan an umbrella policy on April 10, 2001, was if that policy provided $1,000,000 in UM/UIM coverage.  Reformation, restructuring or additional provisions of coverage required by statute were effected by operation of Alaska law on the day the policy was issued.

An Oregon case squarely on point with the instant case is Savage v. Grange Mutual Insurance Company, 158 Ore.App. 86, 970 P.2d 695 (Oregon App. 1999), where the Oregon Court Of Appeals decided the question of whether ORS 742.468, which became effective after the defendant issued an umbrella policy but before the underlying accident, precluded recovery of UIM benefits.  The court held that the statutory change did not preclude recovery of UIM benefits.  Savage v. Grange, 970 P.2d 695.  The court's analysis is thorough and lengthy.  Id. at 697-700.  The court noted that in a previous case it stated that "failure to offer UIM coverage means that the policy must be reformed to provide UIM benefits", but that "the single reference to "reformed" appears to have been merely shorthand for the imputation of coverage."  Id. at 699.

The court in Savage states:

> We thus conclude that, under Blizzard, the insurer's breach of its statutory duty to offer UIM coverage does not merely give rise to some inchoate entitlement to seek reformation but, instead, results in the imposition of UIM

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

coverage *ab initio* by operation of law.
Id. at 699.

In Ross v. Farmers Insurance Group of Companies, 82 Ohio St.3d 281, 695 N.E.2d 732, 738 (Ohio 1998), the Ohio Supreme Court held:

> [F]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into the contract controls the rights and duties of the contracting parties.

Ross v. Farmers, 695 N.E.2d at 738. The Ohio Supreme Court considered the issue in Ross to be a choice among the date of contract, date of accident and the date of exhaustion in considering what effect, if any, subsequent legislation might have on the relationship between an insurer and its insured. Id. at 735. The court determined that "the date that exhaustion of the tortfeasor's liability limits occurs is not determinative of the applicable law to a claim for underinsured motorist coverage." Id. at 736.

In Ormsbee v. Allstate Insurance Company, 176 Ariz. 109, 859 P.2d 732, 733 (Arizona 1993), the Arizona Supreme Court held that an umbrella policy is an automobile liability policy within the meaning of the uninsured motorist statute. The court in Ormsbee further held that Allstate was required to offer UM/UIM umbrella coverage, and that "[i]ts failure to do so results in imputation of the coverage to the policy as a matter of law."

**LAW OFFICE OF
CRIS W. ROGERS**
**2600 Denali St.**
**Suite 711-B**
**Anchorage, AK 99503**
**(907) 565-5663 ph**
**(907) 565-5684 fax**

Ormsbee v. Allstate, 859 P.2d 732, 736 (Citation Omitted).  Also

of interest is the Arizona Supreme Court's disposition of

Allstate's motion for reconsideration in Ormsbee based on the

Arizona legislature's addition of subsection (I) to A.R.S.

Section 20-259.01 effective July 17, 1993, which provided:

> An insurer is not required to offer, provide or
> make available coverage conforming to this section
> in connection with any general commercial liability
> policy, excess policy, umbrella policy or other
> policy that does not provide primary motor vehicle
> insurance for liabilities arising out of the
> ownership, maintenance, operation or use of a
> specifically insured motor vehicle.

Ormsbee v. Allstate Insurance Company, 177 Ariz. 146, 865 P.2d

807 (Arizona 1993).  The court rejected Allstate's argument that

the statutory addition showed prior legislative intent.   Ormsbee

v. Allstate, 865 P.2d 807-808.  The court stated:

> Whatever subsection (I) means for conduct occurring on
> or after its effective date, it has no effect on
> obligations which arose under the statute before its
> amendment.

Id.

In Bills v. United States Fidelity & Guaranty Company, 280

F.3d 1231, 1236 (9th Circuit 2002), the 9th circuit applied

Arizona law and found:

> When an insurer fails to offer a UM policy in
> connection with a motor vehicle liability policy,
> UM coverage is imputed as a matter of law. Citing
> Castillo v. Miller's Mutual Fire Insurance Company,
> 200 Ariz. 211, 25 P.3d 13 (Arizona App. 2001).

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

Per the terms of the umbrella policy itself as well as case law resolving issues of subsequent legislative enactments, Dr. Morgan's policy was rewritten by operation of law on the date it was sold to provide $1,000,000 in UM/UIM coverage. Holderness, Harrington, Hughes, Burton and Hillman mandate appropriate coverage when insurance is sold in violation of Alaska Statutes. Judge Sedwick's decision in Prosser notes that UIM umbrella coverage is available by operation of Alaska law. Published appellate opinions from courts in Oregon, Ohio, Arizona and other states all directly refute Safeco's position in this case.

The Alaska legislature's addition of AS 21.89.020(i) in 2004 relaxes AS 21.89.020(c)'s UM/UIM offer requirement for excess and umbrella coverage sold after October 24, 2004, which means subsection (i) is irrelevant to this case. This Court must apply the statutory laws in effect on the date Dr. Morgan purchased his policy. In Burton v. State Farm Fire & Casualty Company, 796 P.2d 1361, 1363 (Alaska 1990), the Alaska Supreme Court stated:

**LAW OFFICE OF**
**CRIS W. ROGERS**
**2600 Denali St.**
**Suite 711-B**
**Anchorage, AK 99503**
**(907) 565-5663 ph**
**(907) 565-5684 fax**

> All of AS 28.22 and certain other statutory provisions concerning insurance were repealed by Ch. 70, section 17, SLA 1984 effective January 1, 1989.   A new AS 28.22 differing from the old in many respects was enacted in Ch. 108, section 1, SLA 1989 effective June 14, 1989.  We apply the law that was in effect on February 26, 1985, the day Burton purchased his policy, but observe that our holding today may be relevant in interpreting AS 28.22 as it now exists.   (Emphasis added).

In <u>Hillman v. Nationwide Mutual Fire Insurance Company</u>, 758 P.2d
1248, 1252 (Alaska 1988), Nationwide attempted to rely on a
statutory change contained in AS 28.20.445(d) which took effect
on January 1, 1985, more than one year after the August 14,
1983, accident.  The court expressly rejected Nationwide's
argument that the statutory change must be read as a
clarification of pre-existing law, rather than a change in the
law.  <u>Hillman v. Nationwide</u>, 758 P.2d 1248, 1252.

The legislature added subsection (i) to change AS
21.89.020(c)'s UM/UIM offer requirement of excess and umbrella
coverage.  In <u>Burton</u>, <u>Hillman</u> and the other cases discussed
above courts refused to apply subsequently enacted statutes to
an existing policy.  This Court should similarly refuse to apply
subsection (i) to Dr. Morgan's 2001-2002 umbrella policy and
find that Safeco's denial of coverage was improper as a matter
of law.

**4.    <u>The language of AS 21.89.020(i) and legislative intent</u>**

Safeco's position is also undermined by the text of the
Act.  The addition of subsection (i) to AS 21.89.020 originated
as Section 3 of HB 336, "An Act Relating to motor vehicle
insurance; and limiting recovery of civil damages by an
uninsured driver."  <u>Exhibit 11</u>, pp.1, 4.  Section 6 of the Act
states:

APPLICABILITY.  Section 1 of this Act applies

**LAW OFFICE OF
CRIS W. ROGERS**
**2600 Denali St.**
**Suite 711-B**
**Anchorage, AK 99503**
**(907) 565-5663 ph**
**(907) 565-5684 fax**

to a civil action that accrues on or after the
effective date of this Act.
Exhibit 11, p. 5.

Section 1 of the Act added AS 09.65.300 limiting the

recovery of damages by an uninsured driver.   Exhibt 11,pp. 2-3.

The Act does not contain any express application to insurance

policies purchased or coverage offers made before the Act's

effective date.

The language the legislature utilized in AS 21.89.020(i)

precludes its application to previous policies.  Subsection (i)

says "automobile liability insurance", not "automobile liability

policy".  A "policy" is defined by AS 21.90.900: "(32) "policy"

means the written contract of or written agreement for or

effecting insurance[.]"  The definition of "insurance" in AS

21.90.900 provides:

> "(24) "insurance" means a contract whereby one
> undertakes to indemnify another or pay or provide
> a specified or determinable amount or benefit upon
> determinable contingencies[.]"

By its terms, AS 21.89.020(i) references "insurance", not

"policy".  AS 21.89.020(a) requires that an auto liability

policy must contain equal UM/UIM limits which are not subject to

waiver once the policy is issued.  On the other hand, AS

21.89.020(c) requires that an insurer offering auto liability

insurance must offer coverage with equal UM/UIM limits.  Thus,

subsection (i) applies to future offers of auto liability

**LAW OFFICE OF**
**CRIS W. ROGERS**
**2600 Denali St.**
**Suite 711-B**
**Anchorage, AK 99503**
**(907) 565-5663 ph**
**(907) 565-5684 fax**

insurance, not an existing policy.  This distinction defeats

Safeco's reliance on AS 21.89.020(i).

Legislative history also reveals that the enactment of AS

21.89.020(i) was intended to change an insurer's legal

obligation to make UM/UIM offers for excess and umbrella

coverage with no intent whatsoever to change previously written

policies.

May 4, 2004, Senate Finance Committee minutes reflect the

testimony of Representative Meyers, the bill's sponsor.  Exhibit

12, pp.1-2.  Representative Meyers' testimony first addresses

the proposed prohibition on recovery of economic damages by an

uninsured driver, and then he references the proposed minor

changes to insurance statutes:

> Representative Meyers noted that the committee
> substitute also contains "minor technical changes"
> that pertain to insurance statutes.

Exhibit 12, p.2.

May 4, 2004, Senate Finance Committee minutes also reflect

the testimony of Michael Lessmeier, State Farm Insurance

attorney, in support of the section of HB 336 which eventually

was enacted AS 21.89.020(i):

> Mr. Lessmier stated that the other technical
> change in the bill addresses the system that has
> been established in the State through which insurance
> companies provide policyholders the option to elect
> one of a variety of monetary levels of the mandated
> offers uninsured/underinsured coverage.  He noted that
> while a person could decline to purchase uninsured/
> underinsured motorist coverage at the onset of

LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

purchasing a new policy, insurance companies are required to provide these options to each policy-holder every six months. He continued that, in addition, State Courts have ruled that these coverage offers must be provided for "umbrella policies as well as on the underlying primary policy covering the automobile." Therefore, he stated, the multitude of different offerings on a multitude of different policies is difficult to manage and to understand, and furthermore, he disclosed that one major insurance carrier in the State has halted its issuance of umbrella and excess [sic] policies as a result of this requirement. In summary, he explained that the technical change in this regard is that the requirement for mandatory uninsured/underinsured offers be limited to the primary policy covering the automobile."

Exhibit12, pp.2-3.

Neither the bill's sponsor or its experienced insurance lobbyist suggested that the amendment would clarify the status of existing excess or umbrella policies. Rep. Meyer testified that the bill contains "minor technical changes" that pertain to insurance statutes. Mr. Lessmeier testified about changing the system, difficulty in managing the multitude of offerings, and that the technical change is that "the requirement for mandatory uninsured/underinsured **OFFERS** be limited to the primary policy[.]" (Emphasis Added).

In sum, the Alaska legislature did not intend subsection (i) to affect policies sold prior to October 24, 2004. Testimony of the proponents of the amendment establishes their intent that UM/UIM umbrella coverage offers, not existing policies and losses, were to be affected by subsection (i).

**LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax**

5. **Additional provisions of the Alaska Statutes prohibit retrospective application of statues**

Safeco cannot argue application of AS 21.89.020(i) to Dr. Morgan's umbrella policy purchased in April 2001. AS 01.10.090 states: "No statute is retrospective unless expressly declared therein."

AS 01.10.100(a) provides that the amendment of a law does not release or extinguish any right accruing or accrued under the law unless the amending act so provides expressly. Thus, Safeco's failure to offer Dr. Morgan $1,000,000 in UIM umbrella coverage cannot is not excused by the addition of AS 21.89.020(i).

Finally, AS 21.42.265 provides:

> "**Effective date of coverage.** Unless otherwise provided by law, the effective date of a change relating to coverage under an insurance contract as a result of a change to this title is the issue date for a new policy or the renewal date for a renewal policy."

Thus, because AS 21.89.020(i) is a change to Title 21 it would only apply to Dr. Morgan's umbrella policy beginning with the policy period April 10, 2005, to April 10, 2006. AS 21.42.265 prohibits any effect of subsection (i) on the coverage provided by Dr. Morgan's umbrella policy effective during the policy period April 10, 2001, to April 10, 2002.

**LAW OFFICE OF
CRIS W. ROGERS**
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax

## CONCLUSION

In sum, the facts in this case are indeed undisputed. There isn't any basis in case law or statute for Safeco to establish its entitlement to judgment as a matter of law. Safeco's reliance on statute of limitations cases and meaningless contentions about when a UIM claim accrues highlights the lack of merit in Safeco's case.

On the other hand the Defendants' cross motion for summary judgment presents five different bases for judgment in their favor as a matter of law. In sum, Safeco's motion should be denied and the Defendants' motion granted.

RESPECTFULLY SUBMITTED this 1st day of June, 2006, at Anchorage, Alaska.

LAW OFFICE OF CRIS W. ROGERS
Attorneys For the Defendants

Michael R. Wirschem
Alaska Bar No. 9511049

**LAW OFFICE OF
CRIS W. ROGERS
2600 Denali St.
Suite 711-B
Anchorage, AK 99503
(907) 565-5663 ph
(907) 565-5684 fax**

CERTIFICATE OF SERVICE
I certify that on this 1st day of June, 2006, a true and correct copy of the foregoing document together with Exhibits 1-12 were served by courier hand delivery to:

    Gary A. Zipkin
    Guess & Rudd, P.C.
    510 L Street, Suite700
    Anchorage, AK 99501

Michael R. Wirschem