# Senate FINANCE Minute



May 04, 2004

>  SENATE CS FOR CS FOR HOUSE BILL NO. 336(JUD)
>  "An Act relating to motor vehicle insurance; limiting recovery
>  of civil damages by an uninsured driver; and providing for an
>  effective date."

This was the first hearing for this bill in the Senate Finance Committee.

Co-Chair Wilken commented that this legislation would prohibit a person operating an uninsured motor vehicle from recovering non-economic losses in situations in which injury or death might occur. He noted that SCS CS HB 336(JUD), Version 23-LS1254\I, and two accompanying fiscal notes are before the Committee.

REPRESENTATIVE KEVIN MEYER, the bill's sponsor, pointed out that the two accompanying fiscal notes indicate that no expenses would be incurred were this bill implemented. He explained that this bill would decree that, "if you are knowingly going to operate a car without State required car insurance, then you simply cannot sue for non-economic damages such as pain and suffering;" however, he clarified that a person could sue for punitive and economic damages such as wages, medical expenses, and car repair expenses. He noted that the word "knowingly" was incorporated into the bill by the Senate Judiciary (JUD) Committee. Other language added by the JUD Committee he explained, stated that a person who knowingly drove without the required vehicle insurance could sue for non-economic damages in situations in which the other driver: was driving while intoxicated or was on drugs; intentionally caused the accident; was fleeing from the scene of the crime; or was at the time of the accident committing "a felony, or was driving recklessly or with gross negligence." He voiced his support for the amendments incorporated into the JUD committee substitute.

SFC 04 # 106, Side B 4:11 PM

Representative Meyer stated that this legislation was developed as a result of a constituent who is a single woman with "a low-paying job" and who struggled to pay $1,500 a year for her car insurance, contacted him after discovering that her neighbor, admittingly, did not have vehicle insurance. This woman, he shared, thinking this was unfair, began to research the situation, and found that numerous states, such as California, have adopted legislation prohibiting uninsured motorist from collecting non-economic awards, and that other states also prohibit the furthering of economic awards. He shared that the JUD committee substitute before the Committee resembles law currently in effect in Louisiana. In addition, he disclosed that insurance agencies pass non-economic lawsuits award expenses on to the 82-percent of vehicle owners who



pay insurance premiums. Therefore, he stressed that those who do pay are essentially subsidizing the costs incurred by the 18-percent that do not.

Representative Meyers disclosed that a member of his family, while driving, has experienced two instances in which she was hit by an uninsured motorist, and at the time, he thought, "no problem, this is why I have insurance coverage." However, he has since realized that as a result of these types of accidents, his insurance rates rise. Therefore, he stated that as a matter of fairness, "a person who is not paying into the system should not be able to collect as much out of the system." He also proclaimed that individuals who comply with the law and pay liability insurance should be classified as "victims" of an uninsured motorist. He also acknowledged that an uninsured person might be unable to acquire insurance due to having had multiple accidents or speeding tickets. He stressed that these people should not be on the road. He stated that the goal of this legislation would be to encourage everyone to comply with the law as greater protection and fairness for everyone would result. He reminded that driving is a privilege and not a right.

Representative Meyers noted that the committee substitute also contains "minor technical changes" that pertain to insurance statutes.

MICHAEL LESSMIER, Attorney, State Farm Insurance, informed the Committee that State Farm has 26-percent of the State's automobile insurance market "with approximately 123,000 policies in force." Continuing, he stated that every State Farm policyholder would "positively benefit" were this legislation adopted.

Mr. Lessmier addressed the two technical changes incorporated into the JUD committee substitute in Sections 2 through 5: one being the "mirror rule" which resulted from a federal Supreme Court decision that mandated the each "uninsured/underinsured motorists coverage must mirror the coverage in your liability policy." This, he explained, means that were one's liability policy to provide for punitive damages, one's "uninsured/underinsured motorists policy must also provide for punitive damages. He stated that, "there is no good reason to require a victim of an uninsured motorist to pay for that kind of coverage" in that, he expressed, "punitive damages don't punish the uninsured driver at all, they just punish the victim." Therefore, he stated that the bill addresses punitive damage coverage by specifying that it would "not be required to be part of the uninsured/underinsured motorist coverage."

Mr. Lessmier stated that the other technical change in the bill addresses the system that has been established in the State through which insurance companies provide policyholders the option to elect one of a variety of monetary levels of the mandated offers uninsured/underinsured coverage. He noted that while a person could decline to purchase uninsured/underinsured motorist coverage at the onset of purchasing a new policy, insurance companies are required to provide these options to each policyholder every six months. He continued that, in addition, State Courts have ruled that these coverage offers must be provided for "umbrella policies as well as on the underlying primary policy covering the automobile." Therefore, he stated, the multitude of different offerings on a multitude of different policies is difficult to manage and to

Exhibit 12
Page 2 of 3

understand, and furthermore, he disclosed that one major insurance carrier in the State has halted its issuance of umbrella and access policies as a result of this requirement. In summary, he explained that the technical change in this regard is that the requirement for the mandatory uninsured/underinsured offers be limited to the primary policy covering the automobile.

Mr. Lessmier stated that neither of these technical changes are controversial, both would be beneficial, and that both are supported by the Division of Insurance.

Mr. Lessmier commented that the language in Section 1 would benefit policyholders and every single person who complies with the insurance requirements. He stated that the New Jersey Supreme Court recently ruled that this type of law "advances a policy of cost containment by insuring that an injured uninsured driver does not draw from the pool of accident victim insurance funds to which he did not contribute. The legislation thus gives the uninsured driver a very powerful incentive to comply with the compulsory insurance laws, obtain automobile insurance coverage or lose the right to maintain a suit for both economic or non-economic injuries." He noted that while this proposed law is not as strict as the New Jersey law, it makes good sense for Alaska and is a step in the right direction.

LINDA HALL, Director, Division of Insurance, Department of Community and Economic Development, informed the Committee that the Department supports the technical language changes.

Co-Chair Green announced a conflict of interest as her family is involved in the insurance industry.

Senator Bunde moved to report the bill from Committee with individual recommendations and accompanying fiscal notes.

There being no objection SCS CS HB 336 (JUD) was REPORTED from Committee with zero fiscal note #1, dated March 29, 2004 from the Alaska Court System and zero fiscal note #2, dated March 30, 2004 from the Department of Law.

---

**Bill Root:** [      ]  Display Bill Root

To Report Problems with Basis Inquiry

Live KTOO Streams 

Return to Basis Main Menu (23 Legislature)
Return to Legislature Home Page

Exhibit 12
Page 3 of 3